IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Herbert Alonzo Robinson, | Case No. 8:11-cv-02285-RBH-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Sgt. Jill Wilson; Logan Fey; Michelle Redden; Stephanie Singleton[1]; Sgt. Christine Harrison; Sgt. Brian Duval[2]; and John and Jane Does, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 77.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Sergeant Jill Wilson ("Wilson"), Logan Fey ("Fey"), Michelle Redden ("Redden"), Sergeant Christine Harrison ("Harrison"), Sergeant Brian Duval ("Duval"), and John and Jane Does. [Docs. 1, 16, 49.] Defendants filed their motion for summary judgment on February 6, 2012. [Doc. 77.] By Order filed February 7, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 79.] Plaintiff filed responses on

---

[1]Stephanie Singleton was dismissed as a Defendant on January 20, 2012. [Doc. 60.]

[2]Although Plaintiff originally did not use full names for Defendants and/or misspelled Defendants' names, he filed a motion to amend to clarify the names of Defendants on February 21, 2012. [Doc. 88.] The Court granted Plaintiff's motion to amend on February 27, 2012. [Doc. 97.]

February 14, 2012 [Doc. 84] and February 23, 2012 [Doc. 93]. The motion is ripe for review.

## **BACKGROUND**

Plaintiff, who was a pretrial detainee at the Charleston County Detention Center ("CCDC") at the time he filed his Complaint,[3] filed this action generally alleging constitutional violations for denial of due process and denial of access to the courts. [Doc. 1.] On September 15, 2011, Plaintiff filed an Amended Complaint. [Doc. 16.] On November 21, 2011, the Court received a letter from Plaintiff, identifying one of the Jane Doe defendants as Redden [Doc. 33]; Plaintiff also filed a motion to amend/correct the Complaint [Doc. 34], which the Court granted on December 19, 2011 [Doc. 47]. Accordingly, Plaintiff's Second Amended Complaint was filed on December 19, 2011. [Doc. 49.] On February 21, 2012, Plaintiff filed a motion to amend to clarify the names of five Defendants [Doc. 88] and a motion to amend to state the amount of damages [Doc. 89]. The Court granted these motions on February 27, 2012. [Doc. 97.] Thus, the Court will look at the Complaint [Doc. 1], the Amended Complaint [Doc. 16], the Second Amended Complaint [Doc. 49], and the motions to amend [Docs. 88, 89] as setting forth Plaintiff's allegations in this case.

In the Complaint, Plaintiff alleges Wilson took Plaintiff's legal materials from his cell.[4] [Doc. 1 at 5–6.] Plaintiff contends this caused him mental anguish, emotional distress, insomnia, psychological trauma, and paranoia. [*Id.* at 13.] Plaintiff further alleges Wilson

---

[3]Plaintiff is currently confined at the Allendale Correctional Institution ("Allendale"). [*See* Doc. 107 (most recent notice of change of address).]

[4]Plaintiff alleges Wilson, Fey, and other officers rummaged through his legal mail but Wilson took the materials. [Doc. 1. at 6.]

2

and the Jane and John Does refused to assist Plaintiff with "getting legal documents notarized to courts and [the Department of Social Services]." [*Id.* at 14.] In Plaintiff's Amended Complaint, he alleges the taking of his legal materials also caused acute pain in his abdomen, bloody stools, and high blood sugar levels. [Docs. 16 at 6; 16-1 at 2.] In Plaintiff's Second Amended Complaint, he alleges Redden intercepted legal grievances and refused to assist Plaintiff with getting back his legal materials. [Doc. 49 at 3.] He further contends Harrison refused to help him get back his legal property. [*Id.* at 4.] Plaintiff asserts he submitted ten or more grievances to Singleton, who refused to answer them and, when she finally answered them, it was only to say it was not her job. [*Id.*] Plaintiff further alleges Duval never helped Plaintiff. [*Id.*] Accordingly, Plaintiff alleges Defendants were deliberately indifferent toward him by refusing to assist him in getting his legal property, and Defendants' actions and/or inactions did not serve any penological interest. [*Id.*] Plaintiff seeks a preliminary injunction or temporary restraining order demanding that Defendants return Plaintiff's legal materials; a declaratory judgment that Defendants violated Plaintiff's rights; leave to amend to name the John and Jane Doe defendants; a jury trial to determine punitive and compensatory damages [Doc. 1 at 8]; an order directing "superiors" to turn over a video that would demonstrate to the Court that Defendants removed all Plaintiff's legal materials and read through documents; an order directing Defendants not to retaliate against Plaintiff by reclassifying him to a more restrictive housing unit [*id.* at 18]; an order holding Redden, Singleton, Harrison, and Duval legally liable for violation of Plaintiff's Fourteenth Amendment rights to due process of law and/or equal protection, to include his Eighth Amendment and First Amendment rights; a preliminary injunction or order allowing the Court, Plaintiff, and Defendants' counsel to

review the video of Defendants taking Plaintiff's property [Doc. 49 at 5]; $100,000 in compensatory damages; and $200,000 in punitive damages [Doc. 89].

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is

5

responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

6

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at CCDC [*see* Doc. 107 (most recent notice of change of address, indicating Plaintiff is now at Allendale)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from CCDC, *see id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[5] in a § 1983 lawsuit, *see Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**Failure to Exhaust Administrative Remedies**

Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. [Doc. 77-1 at 12–14.] The Court agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or

---

[5] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance

9

process).  *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").  Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court.  *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007);  *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).  However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

With respect to this case, the record reflects CCDC has a grievance procedure available to all detainees, which is set forth in the Sheriff Al Cannon Detention Center Inmate Orientation Handbook ("the Orientation Handbook") along with other rules governing

detainees confined in CCDC. [Docs. 77-2 ¶ 2; 77-3 at 23.] Plaintiff received a copy of the Orientation Handbook upon his admission to CCDC and, on October 25, 2010, Plaintiff signed the CCDC Classification Interview Form, which states, "I HAVE RECEIVED A COPY OF THE CHARLESTON COUNTY DETENTION CENTER RULES AND REGULATIONS AND I AGREE TO ABIDE BY THESE RULES. I HAVE ALSO RECEIVED A COPY OF THE INMATE PROPERTY DISCLAIMERS FORM." [Docs. 77-2 ¶¶ 4–5; 77-4.] The grievance procedure provides that detainees may file a grievance within five days of a grievable event by completing an Inmate Grievance form or calling the Inmate Grievance Hotline. [Doc. 77-3 at 23.] Detainees have five days after receipt of the notice of decision to appeal to the next level. [*Id.*]

Grievance records indicate Plaintiff filed thirty-five grievances at CCDC between August 14, 2011 and October 6, 2011. [Doc. 77-2 ¶ 21.] Of those grievances, sixteen are related to complaints Plaintiff asserts in this action. [*Id.* ¶ 8; Doc. 77-5.] However, Plaintiff failed to appeal any of the decisions within five days as provided in the grievance policy. [Doc. 77-2 ¶ 10.] Plaintiff acknowledges he has not received a final institutional answer or determination on his grievances. [Docs. 1 at 4; 16 at 1; 49 at 2.] Accordingly, it appears Plaintiff has failed to exhaust his administrative remedies.

In his responses in opposition to Defendants' motion, Plaintiff argues the grievance procedure was repealed. [Docs. 84 at 1; 93 at 6–7.] However, Plaintiff has failed to offer any evidence to support this conclusory allegation. The affidavit of Michael Tice, Captain of Security at CCDC, provides that CCDC has a grievance procedure as outlined in the Orientation Handbook received by Plaintiff when he was admitted to CCDC. [Doc. 77-2.] Plaintiff appears to argue that because grievances are now submitted electronically using

11

a kiosk computer, the grievance procedure has been repealed. However, simply because the process is now electronic does not mean the grievance procedure has been repealed. Instead, it appears the grievance procedure remains in place because Plaintiff submitted grievances and received responses to his grievances, as reflected in the grievance records submitted by Defendants. [Doc. 77-5.] However, as previously stated, Plaintiff failed to appeal any of the decisions within five days as provided in the grievance policy.[6] [Doc. 77-2 ¶ 10.] Accordingly, Defendants' motion for summary judgment should be granted based on Plaintiff's failure to exhaust administrative remedies.[7]

**Strike Under the Prison Litigation Reform Act**

---

[6]To the extent Plaintiff argues he did not know how to appeal the decision because the process is not electronic, such argument fails because Plaintiff does not allege he even attempted to appeal or find out how to appeal.

[7]Even if Plaintiff had exhausted his administrative remedies, the Court would recommend granting Defendants' motion for summary judgment on the merits of Plaintiff's claims. To the extent Plaintiff alleges a deprivation of his property because Wilson took Plaintiff's legal materials, the Supreme Court has explicitly held that deprivations of inmates' personal property do not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 328–36 (1986). The Fourth Circuit has held that deprivations of personal property by corrections officials are not constitutional violations where there are procedures available for the inmate to recover that property or to be financially compensated for the loss. *See, e.g.*, *Mora v. City of Gaithersburg*, 519 F.3d 216, 230–32 (4th Cir. 2008); *Bogart v. Chapell*, 396 F.3d 548, 561–63 (4th Cir. 2005). To the extent Plaintiff alleges denial of access to the courts, to state a claim of infringement of a prisoner's right of access to the courts, a prisoner must include in his complaint factual allegations that tend to support his claim of deprivation of access. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). "A prisoner must also identify an actual injury resulting from official conduct." *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993). Here, Plaintiff has failed to allege any facts that tend to show Defendants impeded Plaintiff's access to the courts. Moreover, Plaintiff has failed to present any facts that tend to show a specific injury, such as missing a filing deadline, with respect to Plaintiff's access to the courts. Finally, to the extent Plaintiff alleges Defendants have failed to help him with filing grievances and/or interfered with the filing of his grievances, there is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983).

12

Defendants ask the Court to count this litigation as a "strike" for purposes of the PLRA. [Doc. 77-1 at 14.] Section 804 of the PLRA amended § 1915(g) and reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The instant action, on the merits, without regard to Plaintiff's failure to exhaust his administrative remedies, is wholly without merit and should be considered frivolous and malicious within the meaning of the PLRA and counted as a "strike" against Plaintiff.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED and that the action be deemed a "strike" against Plaintiff under 28 U.S.C. § 1915A.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 9, 2012
Greenville, South Carolina